## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL P. HOGAN<br>    Plaintiff,<br><br>    v.<br><br>TEAMSTERS LOCAL 170, AND SHANNOR R.<br>GEORGE, individually and in his capacity as<br>Secretary-Treasurer of TREAMSTERS<br>LOCAL 170,<br>    Defendants. | CIVIL ACTION<br>No. 19-11339-TSH |

### MEMORANDUM AND ORDER ON DEFENDANTS'
### MOTION FOR TO DISMISS
**September 30, 2020**

**HILLMAN, D.J.**

Plaintiff, Michael P. Hogan ("Hogan" or "Plaintiff"), brings this action against the

Defendants, Shannon R. George ("George") and Teamsters Local 170 ("Local 170") under state

and federal law , alleging breach of contract (Count One); retaliation (Count Two); abuse of

process (Count Three); malicious prosecution (Count Four), and; defamation (Count Five).

Defendants move to dismiss all counts of the Complaint filed against them for failure to state a

claim. For the reasons set forth below, Defendants' motion is **granted** in part and **denied** in part.

### Background

The factual background is taken from Plaintiff's Complaint and assumed to be true at this

stage of the litigation.  The Court will also consider facts susceptible of judicial notice that "can

be accurately and readily determined from sources whose accuracy cannot be reasonably be

questioned." Fed. R. Evid. 201(b).

Local 170 is affiliated with the International Brotherhood of Teamsters ("IBT"). In 2018, Plaintiff and Defendant George were both running for the position of Secretary-Treasurer of Local 170. George was the current Secretary-Treasurer and Hogan had previously held the position. On June 1, 2018, five envelopes containing statements disparaging George were received at Local 170. The five envelopes were placed in a sealed container and turned over to the Worcester Police Department.

On June 11, 2018, the Worcester Police Department's Latent Print Unit issued a finding that a latent print identified as belonging to Plaintiff was found on a letter inside one of the unopened envelopes. On June 14, 2018, a Worcester police officer ("Interviewing Officer") interviewed George and informed him of the Latent Print Unit's findings. During the interview, George stated that Plaintiff drove past the Local 170 and blew his truck's air horn "nearly every day." George further stated that he had been told by others that Plaintiff's reason for driving by Local 170 and blowing his air horn was to "let George know that [Hogan] will be coming back." The Interviewing Officer noted in his report that this caused George and his family severe emotional distress and that he advised George to seek a harassment order against Plaintiff.

On  June 15, 2018, the Interviewing Officer interviewed Plaintiff who denied any knowledge of the letters, could not explain how his fingerprint was on one of the letters, and expressed his opinion that "campaign mailings for union election are not subject to libel laws." Plaintiff denied preparing, forging, or distributing the letters, and alleged that Defendants wrongfully accused him when they knew or should have known that he did not prepare, forge, or distribute the letters.

On June 18, 2018, the Interviewing Police Officer wrote an extended report of his investigation concluding that Plaintiff "had knowledge of the content of the 5 letters and they

were sent to harass the victim [George] who has suffered serious emotional distress. Plaintiff has participated in a pattern of harassment through the repeated use of the air horn as well as these letters." On the same day, the Interviewing Officer requested that a "summons be issued charging Michael Hogan with Criminal Harassment MGL 265/43A."

On July 9, 2018, a Clerk Magistrate of the Worcester Central District Court held a Show Cause Hearing on the police's application for the criminal harassment charge, and a finding of no probable cause was issued by the Clerk Magistrate. The Worcester Police appealed the Clerk Magistrate finding to a judge of the Worcester Central District Court. (Compl. Ex. B, 3 ¶ 1, Docket No. 1-2.). A hearing on the appeal was scheduled for August 7, 2018. The appeal was withdrawn by the Worcester Police on July 24, 2018 at the request of the law firm representing Local 170. (Compl. Ex. B, 3 ¶ 1, Docket No. 1-2.)

On June 19, 2018, George filed charges against Plaintiff with the Executive Board of Local 170, alleging facts similar to those in the criminal harassment allegations and seeking to expel Plaintiff from Local 170. On July 20, 2018, a hearing was conducted by Local 170 on the charges against Plaintiff. Although Plaintiff received notice of this hearing several weeks prior to the hearing date, he requested postponement on the day before the hearing. That request was denied, and the hearing was held without Plaintiff's presence. On July 24, 2018, the Executive Board of Local 170 found Plaintiff guilty of the charges and expelled him from Local 170.

The Plaintiff appealed that finding and requested a stay of the expulsion order, which was granted by the union's General President pending exhaustion of Plaintiff's internal union appeals. The stay also permitted Plaintiff to continue his campaign for Secretary-Treasurer of Local 170. On September 4, 2018, a hearing on the appeal was held by Joint Council 10, which upheld the guilty finding and expulsion of Plaintiff from Local 170.

Plaintiff appealed that decision to the General Executive Board of IBT. During the appeal process, Defendants continued to inform the membership of Local 170 that Plaintiff had been expelled and continued to inform the membership that Plaintiff had prepared, forged, and distributed the letters. Plaintiff continued his candidacy for the position of Secretary-Treasurer but was defeated in the election. On or about December 5, 2018, after the election was over, IBT issued a decision reversing the decision of the Executive Board of Local 170 and Joint Council 10 to expel Plaintiff.

## **Standard of Review**

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'— that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

## <u>Discussion</u>

The first issue that the Court confronts are the factual allegations in the Complaint that are contradicted by factual allegations in the exhibits incorporated into the Complaint. (Compl. 2 ¶ 10, 4 ¶ 25, Docket No. 1.) Pursuant to Fed. R. Civ. P. 10(c), "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Furthermore, "it is well-established that in reviewing the complaint, we 'may properly consider the relevant entirety of a document *integral to or explicitly relied upon* in the complaint . . . without converting the motion into one for summary judgment." *Clorox Co. v. Proctor & Gamble Commer. Co.,* 228 F.3d 24, 32 (1st Cir. 2000) (emphasis added) (*citing Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996)). When "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Yacubian v. Unites States*, 750 F.3d 100, 108 (1st Cir. 2014) (*quoting Clorox Co. v. Proctor & Gamble Commer. Co*., 228 F.3d 24, 32 (1st Cir. 2000)) (*citing Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 229 n.1 (1st Cir. 2013)).

*Count I – Breach of Contract*

In Count I, Plaintiff contends that the IBT Constitution is a contract between IBT, Local 170 and their members within the meaning of § 301 of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185. Plaintiff further argues that Local 170 violated Article XIX of the

IBT Constitution by failing to apply the procedural safeguards of the IBT Constitution in disciplinary trials and appeals.

For a breach-of-contract claim to survive a motion to dismiss under Massachusetts law, a plaintiff "must do more than allege, in conclusory fashion, that the defendant breached the contract"; rather, he must "describ[e], with 'substantial certainty' the specific contractual promise the defendant failed to keep." *Alenci v. Hometown Am. Mgt., LLC,* CV 19-12244-LTS, 2020 WL 2515872, at *4 (D. Mass. May 15, 2020), *citing Brooks v. AIG SunAmerica Life Assurance Co.,* 480 F.3d 579, 586 (1st Cir. 2007). A plaintiff must "at least" plead facts identifying "who did what to whom, when, where, and why," and explaining "what obligations were imposed on each of the parties by the alleged contract." *See id.*, *citing Higgins v. Town of Concord*, 246 F. Supp. 3d 502, 518 (D.Mass. 2017). In Massachusetts, interpretation of a contract's terms is a legal question properly resolved by the Court. *Allstate Ins. Co. v. Bearce*, 589 N.E.2d 1235, 1238 (Mass. 1992).

Principles of contract interpretation require that "[s]pecific terms are given greater weight than general language," *In re 604 Columbus Ave. Realty Tr.*, 968 F.2d 1332, 1357 (1st Cir. 1992), and that individual provisions are interpreted "within the context of the contract as a whole, rather than in isolation," *Barclays Bank PLC v. Poynter*, 710 F.3d 16, 21 (1st Cir. 2013). Plaintiff did not include any language in his Complaint specifying which article was allegedly violated by Local 170 and instead attached the IBT Constitution as an exhibit to his Opposition to Defendant's Motion to Dismiss. (Pl.'s Opp. to Defs.' Mot. to Dismiss Ex. 8 § 7(a), Docket No. 24.) The specific section that Plaintiff asserts Defendants violated, Article XIX, states that "[n]o member or officer shall be required to stand trial on charges involving the same set of facts as to which he is facing criminal or civil trial until his final court appeal has been concluded."

Defendants argue that under Section 301(a) of the LMRA, 29 U.S.C. § 185(a), Plaintiff does not have standing to pursue a breach of contract claim based on violations of the Local 170 By-Laws, because violations of a local union's Constitution are not actionable. In regard to violations of the IBT Constitution, assuming it is a contract subject to the LMRA, Defendants argue that Plaintiff failed to cite the provision of the contract which Defendants have breached, failed to explain how Defendants breached the contract, and therefore the claim must be dismissed. Defendants also argue that Plaintiff's breach of contract claims involve allegations of the actions of the Executive Board of local 170, not George, and therefore the breach of contract claim to George must be dismissed. Plaintiff claims Local 170 violated Art. XIX of the IBT Constitution by "arbitrarily and capriciously and/or failing to apply the procedural safeguards . . . in disciplinary trials and appeals." Plaintiff further claims the breach of contract occurred when he was expelled from Local 170 without due process. (*Id*., ¶ 31.)

Here, Plaintiff plausibly sets forth a claim for breaching the IBT Constitution. Defendant George filed charges against Plaintiff on June 19, 2018, with the Executive Board of Local 170, alleging virtually the same facts as in the criminal harassment allegations and seeking to expel Plaintiff from Local 170. Several weeks later, on July 9, the show cause hearing was held before a Clerk Magistrate in state district court who found no probable cause, which was appealed by the Worcester Police to a district court judge. An August 7 hearing was scheduled for the appeal. During this time, it appears that Defendant George was pursuing his charges against Plaintiff with the Local 170, for which a hearing was conducted on July 20, 2018. On July 24, the Local 170 found Plaintiff guilty of the charges and voted to expel him; on the same day, at the behest of the Local 170's attorney, the appeal of the Clerk Magistrate's decision was withdrawn by the Worcester Police.

Because Plaintiff has alleged facts establishing a plausible entitlement to relief for breach of contract, the Court *denies* the motion to dismiss Count I.

*Count II - Retaliation*

Plaintiff argues that the Defendants brought criminal and union charges against Plaintiff to discredit him because he was exercising his right to seek election and running against and speaking out against Defendant George. He further argues that this conduct constitutes "retaliation" under Title I of the Labor Management Reporting Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(5). Defendants argue that no claim for "retaliation" exists and cite case law holding that the motives of an accuser or charging party under this statute are irrelevant. Furthermore, 29 U.S.C. § 411(a)(5) guarantees adequate notice and a fair hearing and Plaintiff has alleged no facts that he was denied the protections of this provision and therefore the claim must be dismissed.

An allegation of retaliation does not give rise to a violation of 29 U.S.C. § 411(a)(5). *Murphy v. Local Union No. 18,* 1978 U.S. Dist. LEXIS 16537, at *171 (N.D. Ohio 1978); *Rosario v. Dolgen*, 441 F. Supp. 657, 681 (S.D.N.Y. 1977); *Pittman v. United Broth. Of Carpenters and Joiners of America*, 251 F. Supp. 323, 324 (M.D. Fla. 1968). Both the *Murphy* and *Rosario* cases hold that it would be a violation of § 411(a)(5) if the member did not receive a "full and fair hearing." In *Rosario*, the court holds that a full and fair hearing requires that "the charges are supported by the evidence." *Rosario*, at 681. In *Murphy*, a full and fair hearing requires "an impartial determination of guilt." *Murphy*, at *171.

Plaintiff alleges that Local 170 retaliated against him by bringing criminal and union charges, and expelling him from membership in the union because he was running against and speaking out against George. As Defendants correctly note, the specific provision cited by

Plaintiff for his claim only guarantees union members adequate notice and a fair hearing before certain disciplinary actions may be taken. The motion to dismiss Count 2 is granted.

*Counts III & IV – Abuse of Process and Malicious Prosecution*

In Count Three, Plaintiff alleges that Defendants instituted criminal charges against him when they knew or should have known that Plaintiff did not harass the Defendants. In Count Four Plaintiff alleges that Defendants instituted criminal charges against him without basis and maliciously with intent to harm him. Defendants argue that Plaintiff failed to allege specific facts establishing the elements of either an abuse of process claim or malicious prosecution claim. Furthermore, Defendants argue that the Worcester Police Department, not Defendants, initiated a criminal harassment charge against Plaintiff and therefore the claim must be dismissed.

For a successful abuse of process claim, Plaintiff must show that the process used was not a "legitimate purpose of the particular process employed." *Millennium Equity Holdings, LLC, v. Mahlowitz*, 73 Mass. App. Ct. 29, 35 (2008). This rule stands even when there may be an ulterior benefit to the defendant in bringing an action. *Id.* Specifically, to state a claim for abuse of process, a plaintiff "must allege facts sufficient to support the propositions that (1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Jones v. Brockton Public Markets*, Inc., 369 Mass. 38, 389 (1975). In this case, the particular process employed was the commencement of the criminal harassment charge. The criminal harassment charge was instituted by the Worcester Police Department based on interviews and the fingerprint found on the disparaging letters. It is irrelevant that Defendant George ultimately benefited in the union election from bringing these charges.

To survive a motion to dismiss for the similar but distinct tort of malicious prosecution, a plaintiff must allege facts establishing that: (1) that the defendant initiated a criminal action

against the plaintiff; (2) that the criminal prosecution ended in the plaintiff's favor; (3) that there was no probable cause to initiate the criminal charge; and (4) that the defendant acted maliciously. *Miller v. City of Bos.*, 297 F. Supp. 2d 361, 366 (D. Mass. 2003). For a successful malicious prosecution claim, Plaintiff must show that he was damaged because the defendant initiated an "original action without probable cause and with malice, and that the original action terminated in his favor." *Millennium Equity, 73 Mass. App. Ct.* at 35-36. Probable cause can be established when it is shown that at the time the complaint was initiated, the claimant reasonably believed the claim was valid. *Id.* at 36.

While an individual may be held to have "instituted" proceedings where he "presses the police to apply for a complaint," it is black letter law that merely relating facts to a police officer will not expose a private person to liability if the officer used his independent professional judgment in pursuing the matter, even if that private individual "started the chain of events that led to legal process." *Conway v. Smerling*, 37 Mass. App. Ct. 1, 3-4 (1994). At this early stage of the litigation, and with a limited record, Plaintiff has alleged facts which, taken as true, establish sufficient facts to establish that Defendants used process against him for the purposes of an abuse of process claim or initiated criminal proceedings against him for the purposes of a malicious prosecution claim. *See Lloyd v. Burt*, 997 F. Supp. 2d 71, 83 (D. Mass. 2014). The Court thus grants the motion to dismiss Count III, denies the motion as to Count IV and grants the parties additional time to develop the record.

*Count V – Defamation*

Plaintiff alleges that Defendants made statements to the membership of Local 170 and to the public "in general both orally and in writing, that tended to injure the honesty, integrity, morality, and reputation" of Plaintiff. Plaintiff further argues that these alleged statements, which

Defendants knew or should have known were untrue, exposed him to public contempt and ridicule, and injured and damaged his business.

Defendants argue that Plaintiff has not plead sufficient detail to meet the elements of a defamation claim. Specifically, Defendants argue that Massachusetts law requires a heightened pleading standard for defamation claims and Plaintiff failed to provide the precise wording, approximate dates, and words of the alleged defamatory statements. Also, Defendants argue that the alleged statement that Plaintiff was expelled from Local 170 is not actionable because it is not materially false. Finally, Defendants argue that the LMRDA preempts state law defamation actions unless the alleged defamatory statements were made with actual malice and the plaintiff suffered actual harm. Defendants further argue that Plaintiff has made no allegation that any of the Defendants alleged statements were made with actual malice and alleged no facts suggesting Defendants "knew or should have known" that Plaintiff did not prepare, forge or distribute the letters in Exhibit A of the Complaint, and therefore the claim must be dismissed.

"Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." *North Shore Pharmacy Servs., Inc. v. Breslin Associates Consulting LLC*, 491 F.Supp.2d 111, 124 (D.Mass. 2007) (*quoting Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7 (1991)). "To prove defamation, the plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *Dragonas v. School Comm. of Melrose*, 64 Mass.App.Ct. 429, 437, 833 N.E.2d 679 (2005) (internal quotation and citation omitted).

Claims for defamation are subject to the notice pleading requirements set forth in Fed. R. Civ. P. 8. Therefore, plaintiffs "are not required to set forth the alleged defamatory statements verbatim." *North Shore Pharmacy Servs., Inc.*, 491 F.Supp.2d at 124. Merely alleging that Defendant George and unnamed members of the Local 170 generally made defamatory statements that Plaintiff was expelled from membership and that he sent the letter does not explain the essential "who, what, when, and where," and it does not give Defendants fair notice of the factual basis for Plaintiff's defamation claim. Nor do these vague allegations "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009)). Consequently, the motion to dismiss is granted as to Count 5.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Docket No. 8) is hereby **granted** as to Count II, III and V. and **denied** as to Counts I and IV.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**